UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2015 AUG 28  AM 11: 51

CLERK

BY_____
DEPUTY CLERK

JOHN DOE,                                )
                                         )
                    Plaintiff,           )
                                         )
        v.                               )        Docket No. 1:15-CV-192
                                         )
MIDDLEBURY COLLEGE,                      )
                                         )
                    Defendant.           )

**PLAINTIFF'S MOTION TO SEAL EXHIBITS SUBMITTED IN SUPPORT OF HIS
MOTION FOR A PRELIMINARY INJUNCTION AND MEMORANDUM OF LAW IN
SUPPORT THEREOF**

Now comes the plaintiff, and respectfully requests, pursuant to Fed R. Civ. P. 5.2 and

District of Vermont Local Rule 5.2, that this Court seal certain exhibits submitted in support of

his motion for a preliminary injunction.  As plaintiff explained in his memorandum in support of

his Motion to Proceed Under Pseudonym, identifying him or the complaining witness in this case

is likely to cause real and substantial harm to each of them, and in fact will cause the very harm

for which plaintiff is seeking relief in this case.  Because his affidavit and a portion of the

exhibits contain his name, the name of the complaining witness, the name of other witnesses to

the case, and detailed factual descriptions that would allow plaintiff and the complaining witness

to be easily identified, those documents must be sealed in order to preserve his anonymity and

the anonymity of the complaining witness.  The exhibits plaintiff seeks to seal are:

1. Exhibit S-1:    Middlebury Investigation Materials File 2
2. Exhibit S-2:    SIT Hearing Transcript
3. Exhibit S-3:    SIT Decision
4. Exhibit S-4:    Emails Between Jane Doe and Dean Karen Guttentag
5. Exhibit S-5:    Middlebury Notice of Investigation
6. Exhibit S-6:    Middlebury Investigator Report

7. Exhibit S-7:    Middlebury Human Resources Officer Findings
8. Exhibit S-8:    Middlebury Sanction Decision
9. Exhibit S-9:    John Doe Appeal of Decision
10. Exhibit S-10:  Middlebury Decision on Appeal
11. Exhibit S-11:  John Doe Appeal to Middlebury President
12. Exhibit S-12:  Middlebury President Final Decision
13. Exhibit S-13:  John Doe Offer of Employment
14. Exhibit S-14:  Middlebury Investigation Materials File 1
15. Exhibit S-15:  Plaintiff's Affidavit in Support of Motion for Preliminary Injunction

## STATEMENT OF FACTS

At all times relevant to this case, plaintiff John Doe was a student at Middlebury College ("Middlebury"). (Compl. ¶ 13.)  In the fall of 2014, plaintiff participated in a study abroad program run by the School for International Training ("SIT"). (Compl. ¶ 19.)  SIT is an educational institution located in Brattleboro that is subject to the same laws and regulations as is defendant Middlebury. (Compl. ¶ 17.)  SIT has its own set of policies and procedures that govern the conduct of students participating in its programs. (Compl. ¶ 38.)

In November 2014, plaintiff had a consensual sexual encounter with another student on his trip, Jane Doe,[1] in the presence of a third student, Witness 1, who was Jane Doe's best friend and someone with whom plaintiff had been involved in a sexual relationship. (Compl. ¶ 22.)  The day after the encounter, Jane Doe alleged that the sex had not been consensual. (Compl. ¶ 35.)  Pursuant to its policies, SIT began an investigation and scheduled a hearing on Jane Doe's complaint. (Compl. ¶ 38.)  SIT immediately informed Middlebury of the allegation against plaintiff. (Compl. ¶ 42.)  SIT held an in-person hearing at its campus in Brattleboro in December of 2014. (Compl. ¶ 43.)  Plaintiff attended with counsel, Jane Doe attended with a victim advocate from her university. (Compl. ¶ 45.)  The parties presented written and photographic

---

[1] Plaintiff intends to use a pseudonym for the complainant and other witnesses in this case in order to protect their privacy as well as prevent identification of himself and the complainant. Plaintiff has concurrently with this motion filed a motion to proceed under a pseudonym.

evidence, testified, and questioned one another. (Compl. ¶¶ 46-48.)  They each had the opportunity to question the only percipient witness to the claims, Witness 1. (Compl. ¶ 48.) After witnessing the testimony and considering all of the evidence, SIT determined that plaintiff had not committed sexual assault. (Compl. ¶ 60.)  Upon information and belief, SIT notified Middlebury of this decision in mid-December 2014. (Compl. ¶ 60.)  Jane Doe did not appeal this decision. (Compl. ¶ 61.)

In January 2015, Jane Doe contacted defendant Karen Guttentag ("Guttentag") and made the same allegations against plaintiff that SIT had already investigated, considered, and determined to be unfounded, and of which Middlebury was already fully aware. (Compl. ¶ 63.) After being contacted by Jane Doe, however, Middlebury decided to investigate the claim pursuant to its own procedures. (Compl. ¶ 68.)  A non-exhaustive list of Middlebury's wrongful actions during the second investigation into Jane Doe's claims includes: (1) Middlebury instituted the second investigation in contravention of its policies and practices that do not permit the wholesale re-litigation of the matter that had already been decided by SIT; (2) Middlebury failed to comply with the timelines imposed by its own policies and by Title IX for the resolution of complaints, including failure to articulate any good cause for taking more than six months to resolve the case; (3) Middlebury failed to conduct a fair, impartial, or unbiased investigation; (4) Middlebury administrators crafted a false narrative of the case by cherry-picking evidence, ignoring inconsistent statements by key witnesses, and in some cases inventing facts to make plaintiff appear culpable; (5) Middlebury failed to accord plaintiff a presumption of innocence as is required by the preponderance of the evidence standard; and (6) Middlebury failed to provide any rationale or evidence to support its credibility determinations. (Compl. ¶¶ 5, 6, 79, 94, 104, 106.)  At the conclusion of the second investigation and adjudication process, Middlebury

Human Resources Officer Steven Collier ("Collier") determined that plaintiff had engaged in a planned, premediated assault on Jane Doe, a theory of the case that even Jane Doe had never advanced in either the first or second proceedings. (Compl. ¶ 102.) This finding was contrary to the evidence, and was based on Middlebury's biased and unfair approach to investigating and adjudicating claims of sexual misconduct. (Compl. ¶ 103.)  Middlebury expelled plaintiff. (Compl. ¶ 135.)

As a result of Middlebury's actions, plaintiff's academic and employment career has been ruined. (Compl. ¶ 150.)  He was scheduled to graduate from Middlebury in the summer of 2016 and has already accepted an offer for employment with a company to begin in July 2016. (Compl. ¶¶ 141-142.)  That offer is contingent upon him finishing his degree program before July 2016. (Compl. ¶ 142.)  It is highly unlikely that, with an expulsion for sexual misconduct on his record, plaintiff will be able to finish his undergraduate degree at any institution of a similar quality to Middlebury. (Compl. ¶ 147.) Without a college degree he will be unable to pursue graduate studies or employment in the field for which he has been studying. (Compl. ¶¶ 148, 150.)

Without appropriate redress from the Court, plaintiff will continue to suffer these and other harms. (Compl. ¶ 150.)  Plaintiff seeks redress from the Court to undo the harms Middlebury and the other defendants have caused, and he seeks permission to seal those documents that would identify him, Jane Doe, and other students with whom he studied so as not to occasion the very harm against which he litigates.

## ARGUMENT

If plaintiff is forced to disclose his identity in order to litigate this case, he will face significant emotional, reputational, economic, and possibly physical harm.  Having his identity

connected with the false claims of sexual assault that Jane Doe has alleged will subject him to

harassment and intimidation, and will follow him on the internet for the rest of his life.  For this

reason, plaintiff seeks to proceed under a pseudonym in this litigation.  Because the facts of this

case are very specific, any disclosure of the materials included as exhibits to plaintiff's Motion

for a Preliminary Injunction is likely to lead to the identification of both plaintiff and Jane Doe.

As a court in the Eastern District of New York noted in a case where plaintiffs sought to

proceed under a pseudonym, leaving the plaintiffs' names out of the case caption would not

protect their privacy where "exhibits to the complaints, which plaintiffs voluntarily attached and

for which they have sought no confidentiality, disclose plaintiffs' identities." *V.R. v. Board of

Educ. of the City of N.Y.,* No. 03 Civ. 1031, 2003 WL 1565954 at *1 (S.D.N.Y. Mar. 13, 2003).

*See also P.M. v. Evans-Brant Cent. Sch. Dist.*, No. 08-CV-168A, 2008 WL 4379490, at *4

(W.D.N.Y. Sept. 22, 2008).  Because filing his exhibits in the public record would occasion the

same harm as proceeding under his own name, plaintiff requests permission to file those records

under seal.

## I.     PLAINTIFF'S INTEREST IN NOT DISCLOSING HIS IDENTITY OUTWEIGHS THE COMMON LAW PRESUMPTION OF ACCESS TO JUDICIAL DOCUMENTS

In *Lugosch v. Pyramid Co. of Onondaga,* 435 F.3d 110 (2d Cir. 2006), the Second Circuit

determined when the public has the right to access particular documents and when the

presumption of access can be overcome.  The first step of this analysis requires the court to

determine whether the documents in question are "judicial documents." *Id.* at 119.  For a

document filed with the court to be considered a "judicial document" it must be "relevant to the

performance of the judicial function and useful in the judicial process." *United States v. Amodeo*,

44 F.3d 141, 145 (2d Cir. 1995) ("Amodeo I").  "Once the court has determined that the

documents are judicial documents and that therefore a common law presumption of access attaches, it must determine the weight of that presumption." *Lugosch*, 435 F.3d at 119. After determining the weight of the presumption of access the court balances the considerations counseling against access in the particular case. *Lugosch*, 435 F.3d at 120.

    A.  <u>Plaintiff's Affidavit Is Not a "Judicial Document"</u>

    Plaintiff has filed an affidavit in support of his Motion for Preliminary Injunction. He has filed a public version of that affidavit, which he signed as "John Doe" via ECF; he also signed a copy with his real name which he now seeks to file with the Court under seal. The only difference between the two documents is the substitution of "John Doe" for plaintiff's name and the omission of his signature in the version that has been publicly filed.

    Because the version of plaintiff's affidavit that he seeks to file under seal differs from the version he has publicly filed only because it contains his true name and signature, rather than the pseudonym "John Doe," there should be no question as to the propriety of sealing the affidavit. The affidavit is not a judicial document, because it will not play any role in the performance of judicial functions. The Court can rely on the publicly filed affidavit for those purposes; the affidavit plaintiff seeks to seal is only submitted to show the signature of the plaintiff and therefore his attestation as to the truth of the matters in the affidavit.

    Even if the affidavit were a judicial document, and the common law presumption of access technically attached, the weight of that presumption is miniscule where the public already has access to the identical information save the plaintiff's name. *See United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) ("Amodeo II") ("Where testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason.").

Plaintiff's privacy interest and interest in avoiding the harms that will flow from being identified as someone falsely accused of sexual misconduct greatly outweigh that presumption of access.

B.  Considerations for Plaintiff's Privacy and the Privacy of Jane Doe Outweigh the Modest Presumption of Access to the Other Exhibits

While the exhibits plaintiff has attached to his Motion for Preliminary Injunction are "document[s] which [are] presented to the court to invoke its powers or affect its decisions" *Amodeo II*, 71 F.3d at 1050, the weight of the presumption of access to these documents is not strong, and the countervailing interests are significant.

The weight of the presumption of access depends on "the role those documents played in determining litigants' substantive rights—conduct at the heart of Article III—and [ ] the need for public monitoring of that conduct." *Amodeo II*, 71 F.3d at 1049.  Greater weight is given to documents that are "material to a court's disposition of a case on the merits," than documents that do not so directly affect parties' substantive rights. *United States v. Graham*, 257 F.3d 143, 151 (2d Cir. 2001).  The presumption of access exists along a continuum, from a

> low end populated by discovery practice or other pretrial interactions at which the court is primarily a spectator (but query whether that would change if the court were required to address a critical issue, e.g., a discovery dispute) [to] a high end made up of dispositive motions (such as summary judgment) and exhibits submitted at trial. Between these extremes would, under Lugosch, appear to fall every other motion or procedural device, calling for the "exercise of judgment."

*In re NBC Universal, Inc.*, 426 F. Supp. 2d 49, 54 (E.D.N.Y. 2006) (quoting in part *Amodeo II*, 71 F.3d at 1050).  The documents plaintiff seeks to seal are not submitted in conjunction with a dispositive motion that will determine the parties' rights, nor are they submitted at trial. Instead they are submitted to support his motion for a preliminary injunction, which will not adjudicate the merits of the case.  The presumption of access is therefore low on the continuum,

and the countervailing interests to protect the privacy of plaintiff, Jane Doe, and the other student witnesses in this case is significant.

Nor are these particular documents necessary for the public monitoring of the conduct at issue in this case. The core issues raised by this litigation are (1) whether Middlebury has violated its own policies by re-hearing a case already decided by an educational institution to which it delegated responsibility for handling the case, by taking eight months to investigate and decide this case, and by doing so in a biased and unfair manner; (2) whether they engaged in this biased behavior towards plaintiff in because of his gender in violation of Title IX. Plaintiff has publicly filed a detailed complaint alleging the facts to support his claims, as well as a detailed affidavit in support of his motion. More importantly, Middlebury's policies and training materials, the central documents at issue in the case, have been publicly filed. The public does not need the details contained in the exhibits plaintiff seeks to seal – including the names of students involved in the case and details about the study abroad program's location – in order to monitor Middlebury's actions. *See In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.,* No. 07 CIV. 10470, 2013 WL 3531600, at *3 (S.D.N.Y. July 12, 2013) ("The public's interest in monitoring the federal courts will not be served in any appreciable way by inspection of the portions of the documents at issue").

Weighed against this low presumption of public access is the very strong interest plaintiff has in maintaining his privacy. *See Lugosch*, 435 F.3d at 120. As plaintiff has argued in his Motion to Proceed under Pseudonym, if he is identified as the plaintiff in this case he will forever be branded as someone charged with sexual assault, even though he is innocent of that charge and was found not responsible by the educational program where the alleged incident occurred. Because that is precisely one of the harms plaintiff seeks to challenge in this suit,

disclosing his identity would subvert the purpose of this lawsuit. Plaintiff will suffer reputational, employment, and economic harm if it becomes public knowledge that he has been the respondent in Middlebury's disciplinary proceedings.

Moreover, both plaintiff and the other students identified in and identifiable by the exhibits at issue have statutory privacy interests in the documents at issue. The disciplinary records of plaintiff and Jane Doe at SIT and Middlebury are protected by the Family Educational Rights and Privacy Act (FERPA), 20 U.S. Code § 1232g. Consistent with that law, throughout the two investigations the documents at issue were held in the strictest of confidence, only provided to those persons actively involved in the disciplinary processes.

The documents contain extremely personal information about not only plaintiff, but about Jane Doe and Witness 1. The records contain information about Jane Doe's medical and mental health conditions, medications, and treatment, as well as information about plaintiff, Witness 1, and Jane Doe's sexual histories and practices. Disclosure to the public of these documents would gravely compromise plaintiff, Jane Doe, and Witness 1's privacy rights in their educational and medical records as well as in their private information.

Given the number of details contained in this record that would lead to the identification of plaintiff, Jane Doe, or both, this is not a case in which redaction is possible. *See Amodeo II*, 71 F.3d at 1048 ("[W]e believe that release of the redacted version of Part 1 of the Report either would provide little meaningful information to the public because the redactions are so extensive or might, if responded to, cause the confidential sources to be identified."). Nearly every page of the exhibits at issue contains the names of the plaintiff and witnesses; some exhibits state those names multiple times per line over the course of many pages. Every exhibit also contains

references to the location of the study abroad program, which would easily identify the plaintiff

and witnesses as SIT only takes small groups of students to each location each semester.

Although the exhibits are judicial documents, no strong presumption of public access

attaches and the countervailing privacy interests of not only plaintiff but other witnesses to the

case substantially outweigh that presumption.

## II.   THE FIRST AMENDMENT DOES NOT PROVIDE A RIGHT TO ACCESS TO THE DOCUMENTS IN QUESTION

In addition to the common law presumption of access to court documents, the First

Amendment also provides a "qualified" right of access to some judicial documents. *Lugosch*,

435 F. 3d at 124.  A court looks to both "experience" and "logic," to decide whether the qualified

right of access attaches to the documents at issue.  The "experience" prong focuses on whether

the documents in question have historically been accessible to the press and public. *Erie County*,

763 F.3d at 241.  Some circuits have found that the First Amendment right of access does not

attach to non-dispositive pretrial motions. *See Kamakana v. City & County of Honolulu*, 447

F.3d 1172, 1179–80 (9th Cir. 2006); *Virginia Dep't of State Police v. Washington Post*, 386 F.3d

567, 580 (4th Cir. 2004).  While the Second Circuit has discussed a number of situations in

which the First Amendment right of access has historically attached, *see Hartford Courant Co. v.

Pellegrino*, 380 F.3d 83, 91-93 (2d Cir. 2004), counsel has not found a case in the circuit

specifically determining whether non-dispositive civil motions belong on that list. *Cf. Matter of

New York Times Co.*, 828 F.2d 110, 114 (2d Cir. 1987) (finding the right to attach to pretrial

*criminal* motions); *Westmoreland v. Columbia Broad. Sys., Inc.*, 752 F.2d 16, 23 (2d Cir. 1984)

(finding right to attend civil proceedings).

Furthermore, as discussed above, logic does not necessitate providing the exhibits to the

public where they are not germane to the public's understanding of the case.  Because there

appears to be no historical access to exhibits attached to motions for preliminary injunction and because logic does not require access to the exhibits, the First Amendment right of access does not attach.

Even if the First Amendment right attached to these documents, that right of access can be overcome by a showing that a sealing is necessary to preserve higher values. *Lugosch*, 435 F.3d at 124. The Second Circuit has found that "higher values" includes privacy interests and safety concerns, *United States v. Erie County, N.Y.*, 763 F.3d 234 (2d Cir. 243-44), two of the interests that lead plaintiff to seek to proceed by pseudonym and seal certain exhibits to his motion. As plaintiff has explained, he and the other students involved in this case have significant privacy interests in the educational records at issue, and will suffer significant harm if those documents are released and plaintiff and the other students' identities become public.

## CONCLUSION

If plaintiff cannot file the exhibits at issue under seal his identity, the identity of Jane Doe, and the identity of other students involved in this case will be made public in contravention to the purposes of FERPA and the privacy with which these documents have been maintained to this point. Neither the common law right of access to judicial documents nor the First Amendment require disclosure of the documents where they are not material to the adjudication of the merits of the case, and where such strong countervailing interests are at stake. Plaintiff therefore respectfully requests that the Court seal the aforementioned exhibits. In the alternative, should sealing not be permitted, plaintiff requests that he be permitted to redact the exhibits to remove all information that could lead to identifying himself, Jane Doe, or other student witnesses in SIT and Middlebury proceedings. Plaintiff requests oral argument.

Date: August 28, 2015

Respectfully submitted,

LISA B. SHELKROT
LANGROCK SPERRY & WOOL, LLP
210 College Street
PO Box 721
Burlington VT 05402
(802) 864-0217
LShelkrot@langrock.com

MONICA SHAH (Mass. Bar. No. 664745)
NAOMI SHATZ (Mass. Bar. No. 677637)
ZALKIND DUNCAN & BERNSTEIN LLP
65a Atlantic Avenue
Boston, MA 02110
(617) 742-6020 (telephone)
(617) 742-3269 (fax)
mshah@zalkindlaw.com
nshatz@zalkindlaw.com
*Motions for admission pro hac vice pending*

*Attorneys for Plaintiff John Doe*

## Certification Pursuant to L.R. 7.0(a)(7)

I hereby certify that I have conferred with Jeffrey Nolan, counsel for defendant Middlebury College, in an attempt to obtain assent to this motion. Defendant Middlebury College does not assent to this motion.

## Certificate of Service

I have served the foregoing document on the following counsel, who is authorized to accept service for Middlebury College, by e-mail: Jeffrey J. Nolan. Dinse Knapp & McAndrew, P.C., P.O. Box 988, 209 Battery Street, Burlington, Vermont 05402 (jnolan@dinse.com).