UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| JOHN DOE, | : |
|       Plaintiff, | : |
|       v. | :   Case No. 1:15-cv-192-jgm |
| MIDDLEBURY COLLEGE, | : |
|       Defendant. | : |

RULING ON EMERGENCY MOTION FOR PRELIMINARY INJUNCTION
(Doc. 4)

I.     Introduction

Plaintiff John Doe[1] (Plaintiff) moves for a preliminary injunction under Federal Rule of Civil Procedure 65(a) against Defendant Middlebury College ("Middlebury" or Defendant).  (Doc. 4.)  He requests Middlebury be enjoined from expelling him and from preventing him from attending courses for the fall 2015 semester.  This breach of contract action[2] was filed August 28, 2015, based on diversity jurisdiction under 28 U.S.C. §§ 1331 and 1332[3], and arises out of Middlebury's handling of a complaint of sexual misconduct against Plaintiff.  (Doc. 1 (Compl.).)  Plaintiff asserts Middlebury's investigation and decision were biased, unfair, and discriminatory and in violation of Middlebury's policies.  Defendant opposes the motion for preliminary injunction.  (Doc. 15.)  Plaintiff filed a reply.  (Doc. 20.)  Having considered the parties' memoranda and arguments presented at the September 15, 2015 hearing, for the following reasons, the motion is granted.

---

[1] Plaintiff's motions to proceed under a pseudonym (Doc. 2) and to seal certain exhibits submitted in support of the motion for preliminary injunction (Doc. 5) are not fully briefed.

[2] Doe also alleges breach of the implied covenant of good faith and fair dealing and violation of Title IX of the Education Amendments of 1972.  (Compl. ¶¶ 156-65.)  He seeks preliminary and permanent injunctive relief, expungement of his record, damages, and attorneys fees.  Id. at 25-26.

[3] Doe, a United States citizen, is not a Vermont resident.  (Compl ¶ 13.)  Middlebury College is a private liberal arts college in Middlebury, Vermont.  Id. ¶ 14.

II.     Background[4]

Plaintiff enrolled as a freshman at Middlebury College for the spring 2013 semester. In November 2014, while on a study abroad program with the School for International Training ("SIT"), Plaintiff was accused of sexual misconduct. The complainant was also a participant in the program but was and is not a Middlebury College student. Under its policies, SIT investigated the complaint and held a hearing, after which Plaintiff was exonerated in December 2014. SIT kept Middlebury informed regarding the complaint, investigation, hearing, and outcome. Middlebury allowed Plaintiff to return to campus and classes in January 2015.

Plaintiff alleges that as a result of pressure from the complainant and administrators at her college--including notice that the complainant was dissatisfied with SIT's process and intended to file a complaint with the Department of Education's Office of Civil Rights--Middlebury decided to conduct its own investigation and de novo consideration of the complaint. On January 23, 2015, Plaintiff was informed Middlebury administrators had decided to conduct an investigation of the allegations under the authority of the Scope of Oversight section of the Sexual Misconduct, Domestic Violence, Dating Violence and Stalking ("SMDVS") policy referring to conduct that occurs off-campus but may represent a threat to the safety of the Middlebury community. Plaintiff asserts this action--undertaking a second de novo investigation and determination of the sexual assault allegation--was not authorized because Middlebury's policies pertaining to study-abroad programs and its agreements with Plaintiff prior to his participation indicated Plaintiff would be subject to the policies and discipline of the host institution, in this case SIT.

---

[4] The September 15 hearing was not evidentiary. At this stage in the litigation, the facts are gleaned primarily from the Complaint and review of the exhibits and affidavits supplied by the parties in connection with the pending motion.

Middlebury hired a lawyer who took approximately five months to complete her investigation.[5] A Middlebury human resources officer ("HRO") met with Plaintiff and made findings based on the lawyer's report, concluding Plaintiff violated Middlebury's SMDVS policy. No hearing was held. Plaintiff was provided the investigation report and findings and decision in July 2015. On July 24, 2015, Middlebury's Vice President for Student Affairs and Dean of the College issued a sanction expelling Plaintiff. Plaintiff's July 28 appeal to the Vice President for Academic Affairs was denied on August 4. On August 11, Plaintiff submitted a final appeal to the Middlebury College President and met with her on August 24. On August 26, the President denied Plaintiff's final administrative appeal. Plaintiff filed this action on August 28, 2015.

The fall semester begins September 16, 2015. Plaintiff had access to his Middlebury email and student record accounts as of September 11. He notes his account listed his enrollment as "active," showing he was enrolled in courses and listing his room assignment for the fall 2015 semester. On September 1, Plaintiff received an email from Middlebury's Office of Financial Aid reiterating their request for information for his financial aid application and, on September 9, he received an invoice requesting his tuition payment for the fall 2015 semester.[6] (Doc. 20 at 5.)

Plaintiff expected to graduate from Middlebury in 2016. In the summer of 2015, he completed an internship, normally offered to rising college seniors, that resulted in an offer for a job to begin in July 2016. The job offer, contingent upon his graduation from Middlebury, is for a

---

[5] The SMDVS requires the investigation of a complaint be completed within 45 days from the time of the complaint absent extenuating circumstances. Middlebury asserts extenuating circumstances existed given the complexity of the case and availability of witnesses, some of whom were outside the United States.

[6] At oral argument on the pending motion, Middlebury represented that Plaintiff's expulsion had been stayed during his appeal of the sanction to the President and it was a "computer glitch" and "purely an oversight" that Plaintiff remained listed as an enrolled student.

position with an $85,000 per year salary, and includes a $10,000 signing bonus and $5,000 relocation stipend.

III.    Legal Standard

Preliminary injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, 129 S. Ct. 365, 376 (2008); see also Sussman v. Crawford, 488 F.3d 136, 139 (2d Cir. 2007) (describing preliminary injunction as "extraordinary and drastic remedy").  The decision to either grant or withhold equitable relief "rests in the sound discretion of the court." Petrol. Expl., Inc. v. Pub. Serv. Comm'n of Ky., 304 U.S. 209, 218 (1938).

A court may enter a preliminary injunction when the moving party can establish "(1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party." Oneida Nation of N.Y. v. Cuomo, 645 F.3d 154, 164 (2d Cir. 2011) (internal quotation marks and citation omitted).[7] Additionally, the moving party must show that a preliminary injunction is in the public interest. Id.; see also Winter, 129 S. Ct. at 374 (the moving party "must establish that he is likely to succeed on

---

[7] Middlebury argues a higher standard--requiring Plaintiff to demonstrate "'a clear or substantial likelihood of success on the merits'"--applies because an injunction will provide Plaintiff with substantially all the relief sought and the relief cannot be undone and because Plaintiff seeks to alter rather than maintain the status quo. (Doc. 15 at 10-11 (quoting Koppell v. N.Y. State Bd. of Elections, 153 F.3d 95, 96 (2d Cir. 1998)).)  An injunction would not provide Plaintiff with all the relief he seeks:  allowing Plaintiff to attend classes for the fall semester does not expunge his record or preclude Middlebury from refusing to award or revoking a diploma.  The Court does not view the injunction as altering the status quo where Plaintiff sought a preliminary injunction seeking to prevent interruption in his pursuit of a degree two days after the denial of his final administrative appeal, was listed on Middlebury's student record account as an "active" student enrolled in courses as of September 11, 2015, and was recently contacted by the financial aid office and billed for the fall 2015 semester.

the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.").

IV.     Discussion

    A.     Irreparable Harm

A showing that irreparable harm is likely in the absence of preliminary relief is "the single most important prerequisite for the issuance of a preliminary injunction." Rodriquez v. DeBuono, 175 F.3d 227, 233-34 (2d Cir. 1999). Without it, a preliminary injunction cannot be issued. Irreparable harm is "certain and imminent harm for which a monetary award does not adequately compensate." Wisdom Imp. Sales Co. v. Labatt Brewing Co., 339 F.3d 101, 113 (2d Cir. 2003); see also Nat'l Elevator Cab & Door Corp. v. H &B, Inc., No. 07-CV-1562, 2008 WL 207843, at *6 (E.D.N.Y. Jan. 24, 2008) ("[T]he question is not whether the plaintiff has suffered irreparable harm, but whether it will be irreparably harmed in the absence of an injunction. In other words, the injunction must prevent or remedy the harm.").

Plaintiff claims he will suffer irreparable harm in the absence of an injunction because he has a job offer, to begin in July 2016, contingent on the successful completion of his degree at Middlebury. (Doc. 4 at 5-6.) If Plaintiff is not permitted to begin his senior year in September 2015, he will not complete his degree before July 2016 and will lose the job. Plaintiff asserts another job in this field will be difficult to secure because the job offers stem from successful completion of an internship offered to students entering their senior year of college. While Plaintiff may recover money damages to compensate for lost wages, money damages cannot compensate for the loss of his senior year in college with his class, the delay in the completion of his degree, or the opportunity to begin his career in July 2016 with this particular employment.[8] Further, Plaintiff would have to

---

[8] Middlebury relies on Freeman v. Rochester Psychiatric Center, No. 12-cv-6045T, 2015 WL 4250892 (W.D.N.Y. July 10, 2015) (report and recommendation recommending denial of

explain, for the remainder of his professional life, why his education either ceased prior to completion or contains a gap.  See King v. DePauw Univ., No. 2:14-cv-70, 2014 WL 4197507, at *13 (S.D. Ind. Aug. 22, 2014) (finding irreparable harm where plaintiff would "forever have either a gap or a senior-year transfer on his record," noting the inevitability of questions by future employers or graduate schools for which "any explanation is unlikely to fully erase the stigma").  Money damages cannot provide an adequate remedy for such imminent and non-speculative harm.  This case presents a unique situation where Plaintiff was exonerated of the charge of sexual assault by one U.S. institution following an investigation and hearing, allowed to continue his studies the next term, and subsequently determined by his college following a second investigation of the same allegation to have committed sexual assault, after which he was expelled.  The Court finds Plaintiff is likely to suffer irreparable harm if he is expelled from Middlebury College pending a final determination on the merits in this action.

---

preliminary injunction) for the proposition that loss of a particular job or income, damage to reputation, or difficulty finding other employment do not rise to the level of irreparable harm. (Doc. 15 at 11-12.)  While it may be true that, in employee discharge cases, inability to find other employment does not generally establish irreparable harm, the magistrate judge also notes extraordinary circumstances may justify injunctive relief in "rare situations where the harm generated by loss of employment extends beyond financial boundaries that cannot be adequately remedied by a later award of damages."  Id. at *2 (internal quotation marks and citation omitted) (recommending denial of injunction that would require plaintiff be paid during suspension from work).  Here, the Court finds Plaintiff has demonstrated a situation where the harm extends beyond simply loss of the job and salary offered and cannot be entirely remedied by money damages, or even by delayed graduation from Middlebury College.  See Doe v. N.Y. Univ., 666 F.2d 761, 773 (2d Cir. 1981) (distinguishing "delay in obtaining admission to a graduate school," which ordinarily would not constitute irreparable harm, from "interruption or termination of attendance already in progress"), superseded by rule as recognized in Zervos v. Verizon N.Y., Inc., 252 F.3d 163 (2001) (holding standard of review of a district court's decision on a motion for preliminary injunction is abuse of discretion regardless of whether the district court heard live testimony).

B.      Merits

At this early stage in the litigation, Plaintiff has demonstrated sufficiently serious questions going to the merits of his breach of contract claim to make them fair ground for litigation.[9]  He alleges he and Middlebury have a contract between them under which he paid tuition for his education and the college provides access to its undergraduate degree program.  He asserts Middlebury has breached duties it owes Plaintiff by instituting and prosecuting an investigation and adjudication in violation of its policies and procedures.  Specifically, Middlebury's policies did not authorize a second investigation and de novo evaluation of the allegation of sexual assault after it had been decided in Plaintiff's favor by SIT, the sponsor of the study abroad program during which the alleged misconduct occurred, to whose discipline Plaintiff was subject.  As a result of Middlebury's breach, Plaintiff has suffered the harm of expulsion and--in the absence of an injunction--the concomitant loss of a job, emanating from a completed summer internship program offered to rising college seniors, that depends upon his graduation in 2016.  The Court finds Plaintiff has demonstrated a sufficiently serious question regarding whether Middlebury violated its policies in conducting a second investigation of the charge of sexual assault against Plaintiff after he was exonerated by one U.S. institution following an investigation and hearing.

C.      Balance of Hardships

While the Court has found Plaintiff is likely to suffer irreparable harm if he is expelled, it is unlikely Middlebury will suffer great damage or loss as a result of the issuance of a preliminary injunction preventing the expulsion of Plaintiff for the fall semester.  Plaintiff was permitted to return to classes on the Middlebury campus in January 2015, following the alleged assault, and remained a student during the investigation throughout the semester.  Indeed, Plaintiff remained

---

[9] Plaintiff also asserts violations of the covenant of good faith and fair dealing implied in his contract with Middlebury and Title IX of the Education Amendments of 1972.

listed on Middlebury's student record account as an "active" student enrolled in courses as of September 11, and Middlebury recently billed Plaintiff for the fall 2015 semester. This course of action, and lack of restriction on Plaintiff's conduct while on campus, indicates Middlebury does not view Plaintiff as a threat to the Middlebury community. The Court notes Plaintiff has indicated his willingness, as a precaution, to refrain from entering on-campus residences and to report to an advisor. See Doc. 20 at 2, 11.

The Court is aware colleges have a difficult role in dealing with allegations of sexual misconduct. While Middlebury will suffer interference with its process and sanction if the Court grants the motion, if Middlebury prevails on the merits, it can refuse to award, or revoke, Plaintiff's diploma and maintain Plaintiff's disciplinary record in its files. The harm Middlebury will suffer if Plaintiff is allowed to remain a student for the fall semester is not as great as the harm Plaintiff will suffer if he is not permitted to return to campus but ultimately prevails in the case. See King v. DePauw Univ., 2014 WL 4197507, at *14 (finding the balance of harm firmly in student's favor even though university has "interest in enforcing its own rules of conduct pursuant to its own procedures" and is harmed by having its actions second-guessed by a court because "the harm [university] will have suffered by [student's] court-ordered return to campus this fall, while real, will not be as great as the harm [student] will have suffered if he is not permitted to return to campus but ultimately wins"). Accordingly, the Court finds the balance of hardships tips decidedly in favor of Plaintiff.

D.   Public Interest

While the public interest lies in maintaining campus safety, Plaintiff remained a student at Middlebury, returning to campus following the study-abroad program during which the alleged assault occurred, with no further incidents and there is no indication Plaintiff poses a current threat to campus safety. The Court notes the person who accused Plaintiff of the assault is not a party to

this suit and is not a Middlebury student so Plaintiff's attendance for the fall 2015 semester will not have a direct effect on her. Accordingly, consideration of the public interest does not strongly weigh in favor of denying the motion for preliminary injunction.

V.      Conclusion

Based upon its consideration of the relevant factors, the Court, in its discretion, finds a preliminary injunction allowing Plaintiff to attend fall classes is appropriate. Accordingly, Plaintiff's Emergency Motion for a Preliminary Injunction (Doc. 4) is GRANTED. Middlebury College shall not expel Plaintiff and shall allow him to remain enrolled in his courses for the fall 2015 semester beginning September 16, 2015. Plaintiff need not give security at this time, as the Court finds it is unlikely Defendant will suffer costs or damages.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 16th day of September, 2015.

/s/ J. Garvan Murtha
Hon. J. Garvan Murtha
United States District Judge